## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## (MIAMI DIVISION)

CHRISTOPHER DAVIS, CEO of
PROFESSIONAL CHAUFFER
TRANSPORTATION SERVICES, a Florida
Corporation, on behalf of all For Hire
Transportation Service Companies regulated
under the Miami-Dade County, Florida Code of
Ordinances Part III - Code of Ordinances, Chapter
31 - Vehicles for Hire ¬Article I. In General;
Miami-Dade County, Florida, Code of
Ordinances, Part III - Code of Ordinances,
Chapter 28A, Seaport Security and Operations;
and Miami-Dade County, Florida, Code of
Ordinances, Part III - Code of Ordinances,
Chapter 25, Aviation Department Rules and
Regulations, and on Behalf of the Riding Public
and the Public at Large,

        Plaintiff,

vs.

MIAMI-DADE COUNTY, FLORIDA, UBER
TECHNOLOGIES, INC., and
LYFT, INC.,
        Defendants.
_____/

CIVIL ACTION _____

### NOTICE OF REMOVAL OF DEFENDANT UBER TECHNOLOGIES, INC.

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, Defendant Uber

Technologies, Inc. ("Uber") hereby files this Notice of Removal and thereby removes this action

from the Circuit Court of the 11th Judicial Circuit Court of Miami-Dade County, Florida to the

United States District Court for the Southern District of Florida, Miami Division.   Removal is

proper for two independent reasons:   (a) this Court has jurisdiction under the Class Action

Fairness Act of 2005 ("CAFA"), pursuant to 28 U.S.C. § 1332(d); and (b) this Court has traditional

diversity jurisdiction under 28 U.S.C. § 1332(a).   In support of this Notice of Removal, Uber states as follows:

## I.      THE STATE COURT ACTION

1.      On February 3, 2015, Plaintiff Christopher Davis, individually and on behalf of a purported class, filed a putative class action against Lyft Inc. ("Lyft"), Uber, and Miami-Dade County (the "County") (collectively, "Defendants") in the Circuit Court of the 11th Judicial Circuit Court of Miami-Dade County, Florida, bearing Cause Number 15-02645CA01, styled *Christopher Davis, CEO of Professional Chauffeur Transportation Services, a Florida Corporation, on behalf of all For Hire Transportation Service Companies regulated under the Miami-Dade County, Florida Code of Ordinances . . . and on Behalf of the Riding Public and the Public at Large v. Miami-Dade County, Florida, Uber Technologies, Inc., and Lyft, Inc.* (the "State Court Class Action").

2.      In the State Court Class Action, Plaintiff alleges that he is the CEO of a company that is licensed to provide transportation services in Miami-Dade County, Florida.   (Compl. ¶ 11).

3.      Plaintiff asserts that Uber and Lyft independently operate separate "telephonic app system[s]" that put passengers who need transportation services in touch with "unlicensed drivers who are operating their own unmarked personal vehicles to pick up fares for delivery to specific destinations."   (Compl. ¶ 18(b)).   Plaintiff alleges that Uber and Lyft are not in compliance with Chapter 31 of the Miami-Dade County Municipal Code ("Chapter 31").   (Compl. ¶¶ 10, 18(c)-(d), 21-22).   Plaintiff further contends that the County has not properly enforced Chapter 31 against Uber and Lyft.   (Compl. ¶¶ 19, 22, & "Wherefore" Clause).

4.      Based upon these allegations, Plaintiff asserts three separate counts against Uber and Lyft:   (a) restitution (Counts II-III); (b) tortious interference with advantageous business

relationships (Counts IV–V); and (c) violation of the Florida Antitrust Act ("FAA") (Counts VI-VII).   (Compl. ¶¶ 23–56).   Plaintiff also purports to bring a so-called "claim" for "Injunction" (Count I) against the County.   (Compl. ¶¶ 20–22).

5.      Plaintiff purports to bring his State Court Class Action on behalf of himself and a putative class of all "licensed chauffer transportation companies; licensed taxi companies; licensed jitney transportation companies; licensed individuals who paid for taxi cab medallions and the general riding public who are entitled to the safety requirements set out in the Miami-Dade County, Florida, Code of Ordinances . . . ."   (Compl. ¶ 12).

6.      Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and restitution "for the total monetary sum collected by [Uber and Lyft] drivers as well as the commissions earned by [Uber and Lyft] from [their] drivers together with post-judgment interests and costs of this proceeding."   (Compl. ¶¶ 19, 27(a), 32(a), & Wherefore Clauses).

7.      Uber was served with a copy of the summons and Complaint on February 10, 2015.

8.      Pursuant to 28 U.S.C. § 1446(a), copies of the summons and Complaint are being filed with and are attached to this Notice of Removal as part of Composite Exhibit 1.

9.      As of the date and time of filing of this Notice of Removal, no hearings have been set in the State Court Class Action and no trial has been scheduled.   In the State Court Class Action, Plaintiff agreed that Uber's deadline to answer, move against, or otherwise respond to the Amended Petition shall be April 1, 2015.   In addition, Lyft has moved for a 30-day extension of time to file a response to Plaintiff's Complaint (attached hereto as Exhibit 1(C)), and the County filed a motion to dismiss on March 10, 2015 (attached hereto as Exhibit 1(#)).

II.   **VENUE**

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 124(b), 1441(a), & 1446(a), because the 11th Judicial Circuit, In and For Miami-Dade County, Florida, where the State Court Class Action was filed and has been pending prior to removal, is a state court within this federal district and division.

III.   **SUBJECT MATTER JURISDICTION**

11.     Subject matter jurisdiction is appropriate in this Court for two independent reasons.

12.     *First*, this Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this action was brought as a class action; diversity of citizenship exists between one or more members of the putative class and one or more of the Defendants; the number of proposed class members exceeds 100 individuals; and the amount placed in controversy by the Complaint exceeds $5 million in the aggregate.

13.     *Second*, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the named Plaintiff and the non-fraudulently-joined Defendants, Lyft and Uber, and the amount in controversy is greater than $75,000 for Plaintiff's claims alone.

A.     **This Court Has Subject Matter Jurisdiction Under CAFA.**

14.     The Supreme Court recently clarified that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 133 S.Ct. 547, 554 (2014).

15.     CAFA confers upon the federal courts original subject matter jurisdiction over, and thus makes removable, any class action in which: (i) there is minimal diversity (*i.e.*, any member

of the proposed plaintiff class is a citizen of a different state than any defendant); (ii) the aggregate number of putative class members in the proposed class is at least 100; and (iii) the amount in controversy exceeds $5,000,000.   *See* 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B).

16.     If the requisite elements for CAFA jurisdiction are met, as they are here,[1] the consent of all defendants in the action is not required for removal.   *See* 28 U.S.C. § 1453(b).

### 1.     Minimal Diversity Of Citizenship Exists.

17.     This matter easily satisfies CAFA's diversity requirement, which requires a party seeking removal to show only that minimal diversity exists—that is, "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

18.     Plaintiff alleges that he is a resident of Miami and a citizen of Florida.   (Compl. ¶ 4).

19.     In addition, it is reasonable to assume that some members of the "riding public" reside in Florida.

20.     Uber, by contrast, is a privately-held corporation that is incorporated in Delaware and has its principal place of business in California; therefore, it is a citizen of Delaware and California.   *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . .").

21.     Likewise, Lyft is a corporation that is incorporated in Delaware and has its principal place of business in California and, thus, is a citizen of both Delaware and California. *See* 28 U.S.C. § 1332(c)(1).

22.     Therefore, the minimal-diversity requirement is met.

---

[1]     Uber disputes, and reserves the right to contest at the appropriate time, Plaintiff's allegations that this case can properly be certified and proceed as a class action.

## 2.   There Are More Than 100 Class Members.

23.     Plaintiff seeks to certify a class of all "licensed chauffer transportation companies; licensed taxi companies; licensed jitney transportation companies; licensed individuals who paid for taxi cab medallions and the general riding public . . . ."   (Compl. ¶ 12).

24.     There are more than 100 licensed chauffer transportation companies, taxi companies, jitney transportation companies, and licensed individuals with taxi cab medallions who operate in Miami-Dade County.

25.     More fundamentally, Plaintiff's proposed class consists of all members of the "general riding public."   (Compl. ¶ 12).   There are significantly more than 100 passengers who have used Uber's platform to connect with a driver willing to provide transportation services since Uber began operating in Miami-Dade County.   Likewise, there are more than 100 passengers who have used Lyft's platform for transportation services in Miami-Dade County since Lyft began operating in Miami-Dade County.   Therefore, the 100-class member requirement is easily met.

## 3.   The Amount In Controversy Exceeds $5 Million.

26.     Under controlling Supreme Court law, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."   *Dart*, 135 S.Ct. at 554.   The Supreme Court has made it clear that "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."   *Id*.

27.     It is axiomatic that "[a] removing defendant need not confess liability in order to show that the controversy exceeds the threshold."   *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (citations omitted).   Indeed, the amount in controversy "concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he seeks."   *Id*.

6

28.     Applying these principles, this matter satisfies CAFA's amount-in-controversy requirement.   CAFA provides that the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6).   Federal jurisdiction is appropriate under CAFA if, in the aggregate, "the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."   Senate Judiciary Report, S. Rep. No. 109-14, at 28 (2005); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-cv-691-T-30TBM, 2008 WL 2261787, at *2 (M.D. Fla. May 30, 2008) ("While the general rule of nonaggregation holds that at least one plaintiff must show that at least $75,000 is in controversy, the amount in controversy under the CAFA can be satisfied by aggregating the individual class members' claims").

29.     The Eleventh Circuit has recognized that the amount in controversy for CAFA jurisdiction can be satisfied through "reasonable deductions, reasonable inferences, or other reasonable extrapolations."   *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

30.     Here, the amount in controversy is met for two independent reasons:   (a) Plaintiff has placed more than $5,000,000 in monetary damages at issue; and (b) the value of Plaintiff's requested injunctive relief alone exceeds $5,000,0000.

> ### a.     The Putative Class Seeks More Than $5 Million In Compensatory Damages, Treble Damages, Punitive Damages, <u>And Attorneys' Fees</u>.

31.     It is well-settled that compensatory damages, punitive damages, and attorneys' fees (when authorized by statute or contract) must be considered when calculating the amount in controversy under 28 U.S.C. § 1332.   *See, e.g., Morrison v. Allstate Indem. Co.*, 228 F.3d 1255,

1265 (11th Cir. 2000) ("When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy"); *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered"); *Awad v. Cici Enter.*, No. No. 8:06-cv-1278-T-24TBM, 2006 WL 2850108, at *1 (M.D. Fla. Oct. 3, 2006) (emphasizing that "[i]n determining the amount in controversy, reasonable attorney's fees may be included so long as a statute authorizes the recovery of the fees" and that "in addition to compensatory damages, punitive damages must be considered when calculating the amount in controversy in diversity cases").

32.     Here, on behalf of himself and the putative class, Plaintiff seeks monetary damages in the form of restitution, compensatory damages, punitive damages, and attorneys' fees. (Compl. ¶¶ 16, 19, 27(b), 50, 56, and Wherefore Clauses).   Although Uber disputes that Plaintiff is entitled to recover any damages, Plaintiff has put "at issue" significantly more than $5,000,000.

33.     Plaintiff and the proposed class seek restitution and compensatory damages from Uber and Lyft in the form of the "total monetary sum collected by [Uber's and Lyft's] drivers as well as the commissions earned by [Uber ad Lyft] from [their] drivers" presumably from the time that Uber and Lyft began operating in the County through the present. (Compl. 14, 16, 21, 23 (Wherefore Clauses)).   Needless to say, this amounts to well above $5 million.

34.     In addition, under the FAA, a plaintiff is entitled to "threefold" the damages sustained.   *See* Fla. Stat. Ann. § 542.22(1) (FAA plaintiff "shall recover threefold the damages by her or him sustained, and the cost of suit, including a reasonable attorney's fee.").

35.     Furthermore, Plaintiff also purports to seek punitive damages, which are available for Plaintiff's tortious interference claims.   *See Mgmt. Health Sys., Inc. v. Access Therapies, Inc.*,

8

No. 10-61792-CIV, 2010 WL 5572832, at *5 (S.D. Fla. Dec. 8, 2010), *report and recommendation adopted*, No. 10-61792-CIV, 2011 WL 98320 (S.D. Fla. Jan. 12, 2011) (Florida "tort law provides that punitive damages are available for tortious interference claims").   Florida law permits punitive damages up to three times the amount of compensatory damages.   Fla. Stat. § 768.73(1)(a); *see also McDaniel v. Fifth Third Bank*, 568 Fed. App'x. 729, 732 (11th Cir. 2014) (reversing district court's remand for failure to consider punitive damages and noting that "[a]ny inquiry into whether McDaniel would actually recover these amounts is unnecessary and inappropriate . . . [f]or the purposes of establishing jurisdiction, it is enough to show that he could").

36.     Here, Plaintiff seeks both the "total monetary" sums collected by drivers who use the Uber application and the "total commission[s]" collected by Uber.   (Compl. 14, 16, 21, 23 (Wherefore Clauses)).   The revenues for Uber in Miami-Dade County since June 2014 have alone exceeded several million dollars.   When punitive and treble damages are considered, the amount in controversy separately exceeds the $5 million threshold for Uber alone.

37.     The amount in controversy in this case also more than satisfies the CAFA threshold when the amount of compensatory damages, punitive damages, and treble damages sought against Lyft are also considered.   *See, e.g., Kearns v. Ford Motor Co.*, No. CV 05-5644, 2005 WL 3967998, at *5–6 (C.D. Cal. Nov. 21, 2005) ("Congress intended aggregation to run across all defendants, in order to capture 'all matters in controversy.'").

38.     Plaintiff also seeks attorneys' fees.   *See* Fla. Stat. Ann. § 542.22(1) (successful litigant under FAA may recover cost of suit, including a reasonable attorney's fee."); *Morrison*, 228 F.3d at 1265 ("When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy.").   Regardless of what method is used to

calculate the attorneys' fees in controversy under CAFA, Plaintiff's demand for attorneys' fees further increases the amount in controversy above the $5 million CAFA threshold.

**b.    The Request For Injunctive Relief Alone Satisfies The CAFA $5 Million Threshold**.

39.    Plaintiff seeks injunctive relief that would effectively bar Uber and Lyft from operating in Miami-Dade County.   (Compl. ¶¶ 20–22).   In Senate Judiciary Report 109-14, Congress made clear that the impact of injunctive relief on a defendant must be considered in determining whether CAFA's amount-in-controversy requirement is met.   *See* S. Rep. No. 109-14 (2005), *available at* 2005 WL 627977 (hereinafter, the "Senate Report"); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1205–06 (11th Cir. 2007) ("[The Senate Report is] the authoritative source for finding the Legislature's intent [regarding CAFA].").   The Senate Report expressly provides that "a matter [is] subject to federal jurisdiction under [CAFA] if the value of the matter in litigation exceeds $5,000,000 *either from the viewpoint of the plaintiff or the view point of the defendant, and regardless of the type of relief sought* (e.g., damages, injunctive relief, or declaratory relief)." 2005 WL 627977, at *42–43 (emphasis added).

40.    The Senate Report further states that Congress was well "aware that some courts, especially in the class action context have declined to exercise federal jurisdiction over cases on the ground that the amount in controversy in those cases exceeded the jurisdictional threshold only when assessed from the view point of the defendant," such as when "a class action seeking an injunction . . . would require a defendant to restructure its business in some fundamental way [that] might 'cost' a defendant well in excess of [the amount in controversy], but might have substantially less 'value' to a class of plaintiffs."   *Id.*[2]   The Senate Report explains that some

---

[2]    Thus, Congress was not only aware of the split among federal courts as to whether the "plaintiff-viewpoint" or "either-viewpoint" rule should apply, but affirmatively expressed its

courts in those circumstances declined jurisdiction based on the reasoning that "assessing the amount in controversy from the defendant's perspective was tantamount to aggregating damages," but because CAFA "explicitly allows aggregation for purposes of determining the amount in controversy in class actions, *that concern is no longer relevant*."   *Id.* at 43 (emphasis added).

41.    The Senate Report also states that "in assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of relief and benefits that would logically flow from the granting of the declaratory relief sought," which will often include costs incurred by the defendant in excess of $5,000,000 if required to cease and desist from certain conduct.   *Id.*

42.    Federal courts applying the "either-viewpoint" rule in cases removed under CAFA have relied on Congress's express intent that they do so, as detailed in the Senate Report.   *See, e.g.*, *Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 274 (7th Cir. 2011) (analyzing CAFA's $5,000,000 amount in controversy requirement by examining the cost to defendant of complying with injunction because "the cost of prospective relief cannot be ignored in the calculation of the amount in controversy"); *Ullman v. Safeway Ins. Co.*, 995 F. Supp. 2d 1196, 1218 (D.N.M. 2013) (under CAFA, "a court can calculate the defendants' costs associated with the relief sought to determine the amount in controversy"); *Otay Hydraulics, Inc. v. Safety-Kleen Sys., Inc.*, No. 2:12-CV-07357- ODW(VBKx), 2013 WL 1898573, at *2 (C.D. Cal. May 6, 2013) ("[A]ccording to the [Senate Report], the requirement under CAFA that the amount in controversy exceed $5,000,000 in the aggregate may be established either from the viewpoint of the plaintiff or the

---

intent that courts apply the latter.   Because the "plaintiff-viewpoint" rule was in no way uniform or well-established, courts should not presume that Congress intended CAFA to incorporate that view.   *See Dudley v. Eli Lilly & Co.*, No. 14-13048, 2014 WL 7360016, at *2 (11th Cir. Dec. 29, 2014) (recognizing its prior error in presuming that "in enacting CAFA, Congress had not intended to deviate from established principles of state and federal common law" (internal quotation marks omitted)).

viewpoint of the defendant and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." (internal quotation marks omitted)); *Magnum Minerals, L.L.C. v. Homeland Ins. Co. of N.Y.*, No. 2:13-CV-103-J, 2013 WL 4766707, at *3 (N.D. Tex. Sept. 5, 2013) (same); *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005) (same); *Lewis v. Auto Club Family Inc. Co.*, CIV.A. No. 11-169-D-M2, 2011 WL 3444312, at *3 (M.D. La. July 7, 2011) (either-viewpoint rule applies under CAFA); *Rasberry v. Capitol Cnty. Mut. Fire Ins. Co.*, 609 F. Supp. 2d 594, 600-01 (E.D. Tex. 2009) (same).[3]

43.     In this case, Plaintiff seeks an immediate injunction requiring the County to enforce his interpretation of Chapter 31.   Plaintiff effectively seeks to enjoin the operations of Uber and Lyft by asking the Court to compel Miami-Dade County "to command Defendants UBER and LYFT to immediately cease and desist violating [the] Ordinances" and to "arrest" those "individuals responsible for the Defendant companies' violation . . . ." (Compl. 12 ("Wherefore" Clause ¶ 2)).   Thus, Plaintiff has placed in controversy the amount of money Uber and Lyft would stand to lose if Plaintiff is successful in obtaining the injunction sought and the operations of Uber

---

[3]     Although the Eleventh Circuit has applied the "plaintiff's viewpoint" rule for determining the value of an injunction for amount-in-controversy purposes in a case removed under CAFA, the Eleventh Circuit did not provide any analysis to support or explain its application of that rule in the CAFA context.   *See S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315-16 (11th Cir. 2014). Nor did the Court address the Senate Report, which expresses Congress's intent that CAFA allow courts to consider the value of injunctive relief from either the plaintiff's or the defendant's viewpoint.   *See* 2015 WL 627977, at *42. Instead, the Eleventh Circuit merely cited its precedent adopting the "plaintiff's viewpoint" rule for regular (non-CAFA) diversity cases.   Therefore, the Eleventh Circuit has not yet addressed the issue of whether CAFA's legislative history and express allowance for aggregation of claims abrogate the "plaintiff's viewpoint" rule and allows courts to consider the value of injunctive relief from either the plaintiffs' or the defendant's viewpoint in cases removed under CAFA.   If the Eleventh Circuit were faced squarely with this issue, or heard the matter *en banc*, particularly in light of the Supreme Court's recent decision in *Dart*, Uber respectfully submits that it would adopt the "either-viewpoint" rule, like other federal courts that have changed their position in the CAFA context.   *See, e.g., Tompkins v. Basic Research LL*, No. CIV. S08244LKKDAD, 2008 WL 1808316, at *4 (E.D. Cal. April 22, 2008) (departing from the plaintiff's viewpoint rule and recognizing the either-viewpoint rule under CAFA).

and Lyft in Miami-Dade County are shut down.   *See City of Moore, Okla. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 699 F.2d 507, 509–10 (10th Cir. 1983) (in action seeking declaration that defendant was in violation of zoning regulations, finding amount in controversy met based on the losses defendant would incur if found to be in violation and therefore unable to continue its current operations); *Adams v. Am. Family Mut. Ins. Co.*, 981 F. Supp. 2d 837, 850–51 (S.D. Iowa 2013) (finding defendant sufficiently demonstrated that the "stakes" of the lawsuit exceeded the amount in controversy because "if Plaintiffs are awarded the declaratory and injunctive relief they seek, Defendant is likely to face pecuniary costs that logically flow from such relief in amounts exceeding $5 million"); *Cox v. Allstate Ins. Co.*, No. CIV-07-1449-L, 2008 WL 2167027, at *3 (W.D. Okla. May 22, 2008) ("Defendants have presented uncontroverted evidence that in 2006 alone, Allstate received $70,000,000.00 in premium payments for replacement cost policies sold in Oklahoma . . . .   Thus, disgorgement of the premiums paid to Allstate in only one year exceeds CAFA's jurisdictional amount.   Defendants have therefore clearly shown that the amount in controversy exceeds the statutory minimum of $5,000,000.00.").

44.     If the injunction sought by Plaintiff is obtained, and if Uber is forced to return all fares and commissions it has collected on behalf of drivers who use its software app as a result of the injunction sought by Plaintiff, Uber will lose more than $5 million.

45.     The amount of potential losses in controversy further exceeds the CAFA threshold when the losses to Lyft are considered from the injunction sought by Plaintiff and the putative class members.

**B.      The Court Has Subject Matter Jurisdiction Because The Elements Of Diversity Jurisdiction Are Present.**

46.      Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) because: (a) the amount in controversy exceeds $75,000; and (b) the properly-joined parties are citizens of different states.

**1.      The $75,000 Amount-In-Controversy Requirement Is Met.**

47.      The damages that Plaintiff's claims alone have "put at issue" clearly exceed $75,000 as to Uber.   Plaintiff's Count for restitution (Count II) against Uber alone seeks the "total monetary sum collected" by drivers who use the Uber platform and any commissions earned by Uber.

48.      Drivers using the Uber platform have collected more than $75,000 in fares since Uber launched in Miami-Dade County in approximately June 2014.   When punitive damages and attorneys' fees are considered, this amount increases significantly.   Thus, the amount-in-controversy requirement is met.

49.      Plaintiff's FAA claim (Counts VI) alone demonstrates that the amount in controversy exceeds $75,000.   For the amount in controversy to exceed $75,000, Plaintiff's FAA claim against Uber need only seek $25,000 in compensatory damages, because the FAA grants treble damages as well as attorneys' fees.   *See* Fla. Stat. Ann. § 542.22(1) ("Any person who shall be injured in her or his business or property by reason of any violation of s. 542.18 or s. 542.19 may sue therefor in the circuit courts of this state and shall recover threefold the damages by her or him sustained, and the cost of suit, including a reasonable attorney's fee."); *see also* Compl. ¶ 55 (basing antitrust claim on alleged violations of § 542.18 and § 542.19).

50.      Although Uber disputes that Plaintiff is entitled to any recovery and although Plaintiff has failed to plead any facts to support his damages allegations, it is reasonable to infer

that Plaintiff believes that his business purportedly has lost more than $25,000 in profits due to

Uber's activities.   *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010)

("Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable

inferences, or other reasonable extrapolations from the pleadings to determine whether it is

facially apparent that a case is removable.") (internal quotation marks omitted).   When attorneys'

fees are considered, this amount exceeds $75,000 as to Uber alone.

51.     Because Plaintiff's claims as to Uber independently satisfy the amount-in-

controversy requirement, the Court can exercise original jurisdiction over Plaintiff's claims.[4]

52.     Likewise, Plaintiff's claims against Lyft have placed more than $75,000 in

controversy and, thus, those claims also independently satisfy the amount-in-controversy

threshold under 28 U.S.C. § 1332(a).[5]

### 2.     There Is Diversity Of Citizenship Between The Non-Fraudulently Joined Parties.

53.     There is complete diversity of citizenship between Plaintiff and the Defendants

who have not been fraudulently joined (*i.e.*, Uber and Lyft).   *See* 28 U.S.C. § 1332(a)(1).

54.     Here, Plaintiff is a citizen of Florida, and both Uber and Lyft are citizens of

Delaware and California.   Thus, complete diversity exists between Plaintiff, on one hand, and

Uber and Lyft on the other.

_____

[4]     The value of Plaintiff's request for injunctive relief further increases the
amount-in-controversy above $75,000 as to Uber alone.

[5]     The Court has supplemental jurisdiction over the claims of the purported class under 28
U.S.C. § 1367.   *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005)
("We hold that, where the other elements of jurisdiction are present and at least one named
plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize
supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or
controversy, even if those claims are for less than the jurisdictional amount specified in the
statute setting forth the requirements for diversity jurisdiction."); *accord Shah v. Hyatt Corp.*, 425
F. App'x 121, 124-125 (3d Cir. 2011).

55.     The citizenship of the County should not be considered in assessing whether diversity jurisdiction exists because the County was fraudulently joined as a defendant in the lawsuit.  *See Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) ("When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court.").

56.     A defendant is fraudulently joined, and need not be considered for purposes of determining diversity jurisdiction, when "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court."  *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

57.     Under established Eleventh Circuit law, courts routinely find that a defendant is fraudulently joined when there is no possible cause of action that can be asserted or no possible relief that can be obtained against the resident defendant.  *See Dumas v. ACCC Ins. Co.*, 349 F. App'x 489, 491-92 (11th Cir. 2009) (insurance adjuster was fraudulently joined because the adjuster had no independent duty to the insured); *De La Flor v. Ritz-Carlton Hotel Co., L.L.C.,* 930 F. Supp. 2d 1325, 1328-29 (S.D. Fla. 2013) (applying rule); *Tynes v. Target Corp.*, No. 12-24302-CIV, 2013 WL 1192355, at *2 (S.D. Fla. Mar. 22, 2013) (store owner was fraudulently joined because "plaintiff has failed to allege that any individual duty was owed or that the tort in question was committed in the store manager's individual capacity"); *De Varona v. Discount Auto Parts, LLC,* 860 F. Supp. 2d 1344, 1347 (S.D. Fla. 2012) (tort defendant was fraudulently joined, because "Plaintiff has provided no facts showing that [the defendant] played any role in her

16

injuries"); *Scott v. Home Depot U.S.A., Inc.*, No. 11-62426-CIV, 2012 WL 86986, at *2 (S.D. Fla. Jan. 11, 2012) (applying rule).

58.     Here, Plaintiff asserts only one Count, styled "Complaint for Injunction," against the County.   (Compl. ¶¶ 20–22).   In this Count, Plaintiff seeks an injunction against the County to compel it to enforce its own ordinances in Chapter 31 against Lyft and Uber.   For multiple reasons, there is no possible cause of action that Plaintiff can assert against the County—and certainly no relief that Plaintiff can obtain against the County.

59.     First, nothing in Chapter 31 creates a private cause of action—much less one against the County to enforce its own ordinances as Plaintiff desires.   On the contrary, Chapter 31 includes a detailed enforcement provision that expressly vests the Miami-Dade County Consumer Services Department, as well as county and local police, with the exclusive right of enforcement. *See, e.g.*, Miami-Dade Co. Fla. Code Ordin. §§ 31-90, 31-110, 31-209, 31-610 (2015).   Because Plaintiff cannot bring a private cause of action to enforce Chapter 31 of the ordinances against anyone, much less the County, the County has been fraudulently joined.   *See, e.g.*, *Miami-Dade County. v. Deerwood Homeowners' Assoc.*, 979 So. 2d 1103 (Fla. 3d DCA 2008) (rejecting claim under Miami-Dade County Code of Ordinances for lack of a private cause of action); *De La Campa v. Grifols Am., Inc.*, 819 So. 2d 940, 941–42 (Fla. 3d DCA 2002) (same); *Vaughn v. Segal*, 707 So. 2d 951, 952 (Fla. 3d DCA 1998) (per curiam) (looking to the language of local ordinances and determining that they did not create a private cause of action).

60.     Second, this Court cannot grant the injunctive relief against the County that Plaintiff seeks.   The separation of powers doctrine embodied in the Florida Constitution prevents this Court from ordering the County to enforce its own ordinances according to Plaintiff's wishes. Because the County is entrusted with the discretionary authority to determine when and how to

enforce its own ordinances, Plaintiff cannot obtain an injunction requiring the County to take affirmative action against Uber or Lyft.   It is improper to ask the Court to usurp the power of legal government.   *See Detournay v. City of Coral Gables*, 127 So. 3d 869, 874 (Fla. 3d Dist. Ct. App. 2013) (dismissing homeowners' request for injunction requiring city to enforce zoning ordinance against third party, observing that "[t]o the extent that the Homeowners seek to have the City desist in its settlement efforts and instead vigorously prosecute the enforcement actions, they need to knock on the doors of city hall, not the courthouse"); *see also* Fla. Const. Art. II, § 3.

61.   Lastly, it is axiomatic that a claim for injunctive relief is not an independent cause of action, but, instead, a mere form of relief that requires the pleading of a viable underlying claim. *See, e.g., Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action . . . There is no such thing as a suit for a traditional injunction in the abstract."); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (same); *Pierson v. Orlando Reg'l Healthcare Sys.*, 619 F. Supp. 2d 1260, 1288 (M.D. Fla. 2009) (dismissing injunction count because "an injunction is not a cause of action but a remedy"); *Lemieux v. Litton Loan Serv., LP*, No. 2:09-2816-JAM-EFB, 2009 WL 5206641, at *4 (E.D. Cal. Dec. 22, 2009) (same).   Plaintiff does not and cannot allege that the County violated an independent right of the Plaintiff.   *Klay*, 376 F.3d at 1098 ("a traditional injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise").   Because Plaintiff has not and cannot plead an underlying cause of action against the County, there is no way that Plaintiff can obtain injunctive relief against the County.

62.     Because there is no possibility that Plaintiff can establish a cause of action against the County, much less obtain injunctive relief, the County was fraudulently joined.   Thus, because only Lyft and Uber are proper Defendants, complete diversity exists.

**C.     Timely Removal**

63.     Uber has filed this Notice of Removal within 30 days of service of the Complaint on Uber.   *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .").

**D.     Consent**

64.     The consent of all Defendants is not needed for removal under CAFA.   *See* 28 U.S.C. § 1453(b).   Thus, this issue is irrelevant for CAFA removal.

65.     For purposes of removal for complete diversity jurisdiction under 28 U.S.C. § 1332(a), Lyft consents to removal.   Thus, pursuant to 28 U.S.C. § 1441(b), "all defendants who have been properly joined and served" have consented to the removal of the State Court Class Action.   *See* 28 U.S.C. § 1446(b)(2).

66.     The consent of the County is not required for removal because it is a nominal party or has been fraudulently joined.   *See, e.g., Smith v. Health Ctr. of Lake City, Inc.*, 252 F. Supp. 2d 1336, 1339 n. 5 (M.D. Fla. 2003) ("nominal or formal parties, being neither necessary nor indispensable, are not required to join in the petition for removal."); *Diaz v. Kaplan University*, 567 F. Supp. 2d 1394, 1402 (S.D. Fla. 2008) (consent of fraudulently joined party not required); *Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220, 1222 n.3 (M.D. Ala. 1999) (same); *Woods v. Firestone Tire & Rubber Co.*, 560 F. Supp. 588, 590 (S.D. Fla. 1983) (same).

### E.   Process and Pleadings

67.   In compliance with 28 U.S.C. § 1446(a), copies of all process and pleadings served in the State Court Action are annexed hereto as Composite Exhibit 1.   Plaintiff's Complaint is attached hereto as Exhibit 1A; the return of service and summons for each Defendant is attached hereto as Exhibit 1B; Lyft's unopposed motion for an extension of time to respond to Plaintiff's Complaint is attached hereto as Exhibit 1C; the notice of appearance of Lyft's counsel is attached hereto as Exhibit 1D; and the County's motion to dismiss Plaintiff's Complaint is attached hereto as Exhibit 1E.

### F.   Service

68.   A copy of this Notice of Removal is being served contemporaneously on Plaintiff's counsel (and counsel for all other Defendants) and is being filed simultaneously with the Clerk of the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

69.   By filing this Notice of Removal, Uber does not waive any defenses that may be available to it and reserves all such defenses.   Uber does not concede that Plaintiff is entitled to have a class certified or is entitled to any damages.   If any question arises as to the propriety of the removal of the Class Action to this Court, Uber invokes its right to present additional evidence and briefing to demonstrate that this case has been properly removed.

## IV.   CONCLUSION

WHEREFORE, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, Defendant Uber hereby removes this action from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida to the United States District Court for the Southern District of Florida.

Dated:   March 11, 2015.                     Respectfully submitted,


                                             /s/ Brian M. Ercole
                                             Robert M. Brochin, Esq.
                                             Florida Bar No. 319661
                                             Brian M. Ercole, Esq.
                                             Florida Bar No. 0102189
                                             **MORGAN LEWIS & BOCKIUS, LLP**
                                             200 S. Biscayne Boulevard, Suite 5300
                                             Miami, Florida 33131
                                             Telephone:   305-415-3000
                                             Facsimile:    305-415-3001

                                             *Attorneys for Defendant Uber Technologies,*
                                             *Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on March 11th, 2015, the foregoing Notice of Removal, along

with all exhibits thereto, was served via electronic mail and Federal Express to the following

counsel of record:

Ronald S. Guralnick, P.A.
Miami Tower – Suite 2600
100 SE 2nd Street
Miami, Florida   33131
rgacquit@bellsouth.net
*Counsel for Plaintiff*

Andrew Kemp-Gerstel, Esq.
Junaid N. Savani, Esq.
Liebler, Gonzalez & Portuondo
44 W. Flagler St.
Miami, FL   33130
akg@lgplaw.com
jns@lgplaw.com
*Counsel for Defendant Lyft, Inc.*

Gerald K. Sanchez
Assistant County Attorney
Miami-Dade County Attorney
111 N.W. 1st Street
Suite 2810
Miami, FL   33128
GKS@miamidade.gov
*Counsel for Defendant Miami-Dade County*

/s/ Brian M. Ercole
Brian M. Ercole